Home Savings Bank
        vs.           } No. 76751.
Bartolomeo Rolando et al.

May 31, 1934.

BAKER, P. J. Further heard on question of charging garnishee.

This case has already been before the Supreme Court on the matter involved herein.

165 Atl. 364 (R. I.).

At this time it seems unnecessary to set out in great detail the facts involved because they have been referred to in previous rescripts. In substance, however, the principal facts

necessary for a determination of the question presented appear to be as follows:

The plaintiff bank, located in the City of Boston, had a deposit in the name of one Francesco Marsicano. The defendant Bartolomeo Rolando was the executor named in the will of one Francesco Marsicano, which will was probated in the City of Providence. The money which the plaintiff had on deposit in the name of said Francesco Marsicano was paid over to the defendant Rolando as executor of said will, Mr. Rolando at that time being represented by Mr. Semple. Soon after this payment was made, the plaintiff bank claimed that a mistake had been made and that there were two Marsicanos of the same name and that the one for whom they held the deposit was still alive.

In the meantime, certain payments from the fund had been made in good faith by Mr. Rolando, as executor, under the advice of Mr. Semple, and apparently on April 20, 1928, the balance of $2098.82 had been turned over to Mr. Rolando. At this time he and his wife already had a deposit in the Providence Institution for Savings in their joint names, and at or about said date in April the sum of $2093.82 was deposited by Mr. Rolando in said account.

In the absence of testimony to the contrary, it seems to the Court quite obvious that this deposit was made up of the Marsicano money. After the bank made its claim that the payment to Mr. Rolando had been made by mistake, correspondence was had and conferences were held by attorneys representing the bank and by Mr. Semple representing the Rolandos, and the evidence presented would tend to show that the matter was almost adjusted on an amicable basis. Apparently the last time that Mr. Semple actually saw the Rolandos was about July 12. 1928.

Acting for them, he wrote a letter bearing date of July 17, but after that time he evidently ceased to represent them.

A witness for the bank claims that Mr. Pettine first appeared for the Rolandos about July 12, but the Court is inclined to think that is not the correct date. The evidence would tend to show that July 19, 1928, was the first time the Rolandos consulted Mr. Pettine about the matter. On said date there was some discussion as to whether the plaintiff had attached the account in the Providence Institution for Savings, such attachment apparently being threatened. On that date, acting under the advice of Mr. Pettine, and also through Mr. Cambio, a member of the firm of Pettine, Godfrey & Cambio, the sum of $2137.65 was withdrawn from the Rolandos' account in the Providence Institution for Savings on a written order and immediately deposited in the firm account of Pettine, Godfrey & Cambio in the Lincoln Trust Company. At the same time a check for said full amount of $2137.65 was given by the firm to Mr. Rolando.

This transaction took place about 12:15 P. M. on July 19, 1928. At 2:50 P. M. on said same day, Mr. Pettine individually was served as garnishee in a writ brought by the plaintiff against the defendants, being the case now before the Court. At apparently the same time, the Lincoln Trust Company and the Providence Institution for Savings were also garnisheed. Affidavits were filed by the various garnishees, either disclosing no funds or leaving the matter to the Court for determination. Following that date, nothing took place until early in August when Mr. Rolando desired to cash the firm's check which had been given him July 19th. Some question of identification arose and, acting through Mr. Pettine. the check in question was cashed. The latter retained the sum

of $500 for such legal services as might become necessary. Practically all the balance namely, the sum of $1630, was deposited in a participation account in the Lincoln Trust Company in the joint names of one Paolino and one Aymo. Mr. Paolino was then a law student in the office of Pettine, Godfrey & Cambio and Miss Aymo was a friend of the Rolandos. The bank book relating to said joint account was delivered to Miss Aymo and no withdrawals have been made from said account to this date. On September 12, 1928, the plaintiff caused to be issued a writ of mesne process which was served on the firm of Pettine, Godfrey & Cambio, September 13, 1928, purporting to attach whatever funds of the Rolandos the firm then had. Following this attachment the firm filed a garnishee's affidavit showing no funds. Some considerable time later, Mr. Frank D. McKendall, Chairman of the Board of Directors of the Lincoln Trust Company at that time, and to whom the Rolandos owed rent for certain property in Massachusetts, advanced to Miss Aymo approximately $1400, some of which was used to pay the rent due from the Rolandos to Mr. McKendall, the latter taking as security for said advances the book covering the joint account standing in the names of Paolino and Aymo in said Lincoln Trust Company. Mr. McKendall has been allowed to intervene in the present proceeding in order that he might make claim to the fund now in said joint account. Later, in June 1933, the plaintiff issued another writ of mesne process, garnisheeing in the hands of the Lincoln Trust Company the joint account in question. This last writ was issued without prejudice to the rights of the plaintiff under the original writ and under the writ of mesne process dated September 12, 1928.

The plaintiff bank contends that on the travel of the case and on the evidence presented, the firm of Pettine, Godfrey & Cambio should be charged as garnishee for the full amount of $2137.65, with interest thereon from July 19, 1928, to date. Said firm, on the other hand, claims that at no time when it has been served with writs of attachment issued by the plaintiff has it had in its hands funds of the Rolandos and that, therefore, it should not be charged for any amount.

The first argument of the firm is that nothing was attached on July 19, 1928, when the writ was served individually upon Mr. Pettine.

The Court is inclined to agree with this contention. The first writ of attachment issued by the plaintiff on said last mentioned date was directed against Mr. Pettine individually. In the judgment of the Court this would not operate to attach funds, if any there were, in the firm's account.

See *Spencer* vs. *School District*, 11 R. I. 537;

*Brown* vs. *Collins*, 18 R. I. 242.

The distinction between the individual account of Mr. Pettine and the firm's account seems obvious.

The firm then further urges that as on the original writ issued in this case the defendants, the Rolandos, were never personally served, and as no property of theirs was attached in said writs, and as they have never entered an appearance, the Court has no jurisdiction to proceed further with the matter and that the issuing of writs of mesne process cannot give jurisdiction. The Court is not able to agree with this contention.

It is true that the defendants have never entered an appearance and that, being non-residents, they have never been personally served in this proceeding. It appears to the Court, however, that if the plaintiff, by writ of

mesne process, has been able to attach any property or funds of the defendants, the Court has jurisdiction to proceed with the determination of the case. Possibly the proceeding then is one more in rem than in personam. The matter now before the Court is on the question of charging a garnishee, which, under the law, must be done before judgment is entered. It is very possible that the question may later arise, if any property of the defendants has been garnished or attached on mesne process, as to the amount for which the judgment should enter, whether for the full amount of the claim or merely to the extent, of the property attached, if less than the amount of the plaintiff's claim. This question as to the entry of judgment is not now before the Court and the form and amount of the judgment is to be determined when the time for the entry of judgment arrives.

The first contention made by the plaintiff in support of its claim that it is entitled to follow the funds involved, is that the transfer of the money by the defendants from the Providence Institution for Savings to the account of the firm in the Lincoln Trust Company, and the transfers immediately thereafter, merely constitute a plan designed to hinder, delay and defraud the plaintiff as a creditor of the Rolandos.

There is no evidence in the case that at the time the money was transferred from the Providence Institution for Savings to the firm's account in the Lincoln Trust Company there was any indebtedness existing between the Rolandos and the firm. The only reasonable and obvious conclusion to be drawn from the transaction is that the funds were being placed where it would be difficult for the plaintiff to reach them. There is no question but that the law in this State and generally is well settled that in the ordinary

case the plaintiff's rights against a garnishee cannot rise any higher than those which the defendant himself would have had against the garnishee.

Vol. 28 Corpus Juris, p. 44;

Waldron vs. Wilcox, 13 R. I. 518.

It is equally clear, however, that this general rule is subject to exceptions. One of these exceptions is that where there has been fraud or collusion between the principal defendant and garnishee, then the plaintiff may hold the garnishee, and by the great weight of authority it seems well settled that fraudulent disposition of property may be attacked in garnishment proceedings.

Vol. 28, Corpus Juris, p. 145, p. 241;

Fletcher vs. Pillsbury, 35 Vt. 16.

This exception to the general rule has been recognized in this State.

Smith vs. Millett, 11 R. I. 528.

In the case of Cross vs. Brown et als., 19 R. I. 220, at page 239, the Court cites with approval Vol. 2 Wade on Attachments, Sec. 327, which discusses the situation where there has been collusion existing between a debtor and a garnishee in such manner as to make it difficult for a plaintiff to reach the defendant's property.

Further, our Court has held that in considering transfers of property, it is not always necessary that there be at the time an actual fraudulent intent on the part of those involved to deprive a plaintiff of rights, if what was done actually does hinder, delay and defraud the creditor. The ultimate result is apparently the important consideration.

Eichenberg vs. Marcy, 18 R. I. 169;

Robinson vs. McKenna, 21 R. I. 117.

Giving the facts as presented by the evidence herein due consideration and applying to them the principles of law as hereinbefore discussed, it seems to the Court clear that the

transfers of the fund under discussion were obviously for the purpose of placing it out of the reach of the plaintiff. This being so, it appears to the Court that during the whole transaction a certain amount of collusion existed between the defendants and the firm, the former acting at all times under the advice of the latter. Therefore, unless the cashing of the check by Mr. Rolando in August 1928 and the creating of a joint account in the names of Paolino and Aymo at that time, have brought into the situation the rights of third parties, or placed the fund entirely out of the control of the firm, then the latter should be held as garnishee under the writ of mesne process served on the firm on September 13, 1928.

The next point to be considered, therefore, relates to the effect of the transaction in August and the creation of the joint account at that time.

Following these events, a meeting of the various parties in interest was held in Providence on December 11, 1928. It appears from the evidence that during this meeting considerable feeling was displayed by some of the parties interested. In fact, in the opinion of the Court, a good deal of the present difficulty has arisen because attorneys involved on both sides of this suit became engaged in heated discussions and made statements which obviously prevented an adjustment of the matter.

At this meeting there is credible testimony offered by Judge Leveroni of Boston and Mr. Taft, that Mr. Pettine stated in substance that the money in question was still in his control. Mr. Paolino has testified that he was at that time in Mr. Pettine's office and under his direction and that concerning said fund he would do as told. Judge Leveroni further testified that at said conference Mr. Rolando stated, in Mr. Pettine's presence that his lawyer had the money and he himself had nothing more to do with it.

In connection with this evidence Mr. Pettine's position is that he had a heated discussion on December 11th with Judge Leveroni and that it is difficult for him to remember exactly what was said; that he doesn't think that he definitely stated he had control of the fund, and that he doesn't remember hearing Mr. Rolando say that his lawyer had the money. He further says that he had the money deposited in the joint account in order to protect the bank and his idea was that as long as Mr. Paolino was a joint depositor the fund would not be drawn without his own knowledge and that any statements by him were made to express that thought.

At the present hearing, neither Miss Aymo nor the Rolandos testified either in Court or by way of deposition, although their absence from a previous hearing had been commented upon by the Supreme Court in its opinion.

After consideration, the Court has come to the conclusion that the fair preponderance of the evidence shows that the money deposited in the joint account was so far under the control of the firm of Pettine, Godfrey & Cambio, acting through Mr. Pettine, that at least as late as December 11, 1928, the firm could have arranged for the payment or withdrawal of the money if it had become necessary or if said firm had so desired.

The Court is, therefore, of the opinion that on September 13, 1928, when the writ of mesne process was served on the firm, it had at least indirectly, if not directly, in its possession and under its control funds of the defendants, and that, therefore, the garnishee's affidavit filed by the firm following said attachment on September 13, 1928, setting out that it had no funds of the defendants in its pos-

session was incorrect and that the firm should be charged as garnishee.

The claim of Mr. Frank D. McKendall to a portion of the joint account has been made since the previous hearing in this case. He holds notes signed by Miss Aymo. Apparently, knowing that he was dealing with a joint account, he made loans or advances to her with the hope that later he could obtain the consent of Mr. Paolino. In this connection it should also be noted that part of the money advanced to Miss Aymo was used to pay the rent which the Rolandos owed Mr. McKendall. The evidence shows that the account could be drawn only by both depositors.

It is well settled that where the account is joint, as under the circumstances shown in the present case, the assignment or consent of both depositors is necessary to make a good assignment or transfer. Mr. McKendall is an experienced business man and is connected with the Lincoln Trust Company. It seems obvious to the Court that in making the payments to Miss Aymo as he did. he took his chance of being able to obtain a complete transfer or assignment later. Furthermore, it seems reasonably clear from the testimony that Mr. McKendall discussed the situation, at least to some extent, with Mr. Pettine before he made the last advance to Miss Aymo and at that time he must have had sufficient knowledge to put him on his guard.

The Court is unable to see how Mr. McKendall at the present time has any claim to the joint account in question which is superior to the rights of the plaintiff bank, and as far as the rights of said bank are concerned, his motion to obtain any of said joint account is denied.

The remaining question is to determine the amount for which the firm

should properly be charged under the garnishment of September 13, 1928.

It is true that on that particular date the amount in the joint account in the names of Paolino and Aymo was $1630. It was, however, only a little over a month prior to this date that the firm had retained the sum of $500, apparently in anticipation of future litigation or difficulty. At the time this money was retained by the firm, there does not appear to have been any actual debt then due the firm from the Rolandos, but the retention was more in anticipation of services to be performed. This whole situation, starting with the withdrawal of the money from the Providence Institution for Savings in July 1928 through to the creation of the joint deposit, appears to the Court to have been really one continuous transaction.

After giving the matter careful consideration, the Court has come to the conclusion that the firm should be charged with the full amount of $2137.65, being the sum drawn from the Providence Institution for Savings in July 1928.

The bank also claims that it is entitled to interest on this sum from said date in July to the present time.

The matter of charging a garnishee interest has been fully discussed in the case of *Cross* vs. *Brown et al.*, 19 R. I. 220 at page 240. There the Court held that in the ordinary case it would be proper to charge a garnishee interest. It seems clear, however, that cases may arise in which it would be right for the Court to exercise its discretion in the awarding of interest. On the whole, it appears to the Court that this is a case of that type.

The Court finds that the firm as garnishee should be charged with the principal sum of $2137.65, together with such interest as actually has

accrued to date on the joint deposit of $1630 in the names of Paolino and Aymo.

For plaintiff: George F. Troy.

For garnishee: Pettine, Godfrey & Cambio.